# LEIGHTON *a.* WOOD.

*Supreme Court, First District; General Term, Dec.,* 1863.

EXCUSING DEFAULT.—TERMS.—APPEAL.

The settled power of the court to set aside inquests, and to open defaults in its discretion, for the purpose of attaining justice by a fair trial, may be exercised even after open and confessed negligence.

An inquest should be set aside, unless the court can be fully satisfied that the defendant had no evidence which would materially reduce or defeat the recovery.

On appeal from an order proper to be granted only as a matter of favor, the court at general term, in support of the order, will presume, till the contrary appear, that it was so granted.

Appeal from order setting aside inquests.

Four actions were brought,—one by Lorenzo D. Leighton against Fernando Wood, the three others by William MacDonald, William Van Tassel, and Edward Weylen, against the same defendant,—to recover damages for personal injuries sustained by the plaintiffs, policemen of the Metropolitan Police, distinct from a body of men known as the Municipal Police, acting, as it was averred, under the orders of the defendant. These causes were on the calendar in June, 1862, when they were reserved generally. On December 3, they were put upon the calendar, by a written consent of the attorneys for both parties, for Thursday, December 4. On Thursday, they were called in their order, and postponed, at the request of the defendant's counsel, to the following Monday, on the ground that he was engaged in the Superior Court; and so, from day to day, till Thursday, when the causes were again called. The defendant's counsel, or some one in his behalf, stated that he would conclude his engagement during the day, and suggested that they go over to the next morning on that account, but the plaintiff's counsel said he preferred to wait in court till the engagement should be terminated; and the court accordingly held them till that time. At about two o'clock the defendant's counsel, having finished his engagement, appeared in court, and then stated that he desired to move a postponement, and had sent for his client, to

make an affidavit. The court waited for nearly an hour, when the affidavit arrived, and the defendant's counsel read it, and moved a postponement. The affidavit stated that the defendant hoped and expected that a settlement of the cause might be made, and likewise, that four material witnesses were absent at the war. A trial of a precisely similar case, between another plaintiff and the same defendant, had been had at great length before, and all these four witnesses were then examined. The plaintiff's attorney then stipulated to read their testimony. This, the court said, obviated the necessity for an adjournment, unless it was alleged that it was expected to prove new facts by the witnesses. This was not alleged. The court held, that the prospect of a settlement was no excuse, and directed the causes to proceed.

The next morning plaintiff's counsel appeared with his witnesses. The defendant's counsel again moved to postpone, when the court said that matter had been settled the day before, and the causes must proceed. While a jury was being called, the defendant's counsel served upon the plaintiff's counsel an affidavit of the defendant, stating that he desired a commission to examine General Sickles and General Viele, at Norfolk and Fredericksburg, with an *ex-parte* order granted by a justice at chambers, to show cause the following Monday why a commission should not issue, and a stay of all the plaintiff's proceedings meantime. The court observed, in the hearing of defendant's counsel, that the stay was invalid, that he should disregard it, and directed the plaintiff's counsel to proceed with the trial, but subsequently adjourned the trial till the ensuing Monday, and, after admonishing the jury, directed them to return on Monday morning.

The stay was at once vacated by the justice who granted it. All these facts were known to defendant's counsel within a few minutes. They were known to defendant that day or the next. Formal notice of them was given to defendant's attorneys on Saturday. On Monday inquests were taken, resulting in a verdict of $4,000 in each case. On Tuesday defendant gave notice of motion to set aside the inquests, on the following grounds: That a jury in the first-entitled cause was impannelled while the proceedings therein were stayed; and that after said jury was so impannelled, a portion thereof was discharged,

and other jurors called in their places; and that as to the three other causes, that the said causes were tried on the testimony taken in the other cause, and not in either of them, and that in none of said causes was proclamation made according to law; and if said motion is denied upon the ground of said irregularities, then that the said motion may be granted for favor, on the grounds set out in the papers upon which this motion is made; or for such further or other order in the premises as may be just.

The motion was granted at chambers, with $10 costs in each case. The plaintiffs severally appealed.

*David Dudley Field*, for the appellants.—I. The orders are appealable. (*Code*, § 349, subd. 2 and 3 ; Union Bank *a.* Mott, 11 *Abbotts' Pr.*, 42 ; S. C., 19 *How. Pr.*, 267 ; Beach *a.* Fulton Bank, 2 *Wend.*, 225, 239 ; see Rogers *a.* Paterson, 4 *Paige*, 450.)

II. The ground, that three of the cases were heard on the testimony taken in the others is untenable, because the court, on a motion to open an inquest, cannot look into the testimony taken thereon. If the testimony is insufficient, the remedy is by appeal. (Mayor, &c., of N. Y., *a.* Hyatt, 3 *E. D. Smith*, 156, 165 ; Hollis *a.* Richardson, 13 *Gray*, 392 ; Wilkinson *a.* Tiffany, 4 *Abbotts' Pr.*, 98.)

III. The ground, that no proclamation was made " according to law," is untenable, because, in the absence of proof, it is supposed that every thing was done regularly. (*Brown's Leg. Max.*, 423.) The clerk's minutes likewise show the defendant was called by the crier and did not appear. There is no law, rule, or practice requiring proclamation to be made on the defendant to be called.

IV. The ground, that the default should be opened as matter of favor, addresses itself to the discretion of the court; and if ever there was a case that did not call for the interference of the court, this is one.

V. Not one of the various excuses, even taking them as they appear in defendant's papers, has ever been received as a reason for opening a default. 1. He does not disclose his defence. A simple affidavit of merits is insufficient, and he gives nothing more. (Fowler *a.* Colyer, 2 *E. D. Smith*, 125 ; Armstrong *a.* Craig, 18 *Barb.*, 387 ; Winship *a.* Jewett, 1 *Barb. Ch.*, 173 ; McGaffigan *a.* Jenkins, 1 *Barb.*, 31 ; Ferrussac *a.*

Thorn, 1 *Ib.*, 42.) 2. He does not show surprise. (Armstrong *a.* Craig, 18 *Barb.*, 387; Am. Ins. Co. *a.* Oakley, 9 *Paige*, 496.) 3. He gives no valid, legal, or efficient excuse whatever.

VI. As to the question of opening the default for favor. The discretion of the court in this respect is not unlimited. There are certain rules which govern the exercise of it. 1. In earlier times, a default was never excused except for most substantial reasons,—the imprisonment or infancy of the party, the death of his attorney, floods, storms, and the like. (*Co. Litt.*, 259, b.) 2. But this strictness has been with justice relaxed, and now, for less cause, a default may be excused and opened, though never, even now, without substantial reason. If the proceedings upon the default have been irregular, it matters, indeed, nothing whether the defendant's application be meritorious or not. But where the default has been regularly taken, substantial and sufficient excuse must be shown. In other words, the court will never interfere to take off a default out of pure favor. Thus, with manifest justice, it opens default on account of the sickness of the attorney (Wilmarth *a.* Gatfield, 1 *How. Pr.*, 50); detention by adverse winds (People *a.* Freer, 1 *Cai.*, 394; S. C., *Col. & C. Cas.*, 293); evident mistake (Cogswell *a.* Vanderberg, 1 *Cai.*, 156; Thompson *a.* Paine, 3 *Ib.*, 88; Gardinier *a.* Crocker, *Ib.*, 139); delay from accident (Olney *a.* Bacon, *Ib.*, 132); oppressive and overreaching practice (Smith *a.* Bowen, 2 *Wend.*, 245); surprise (Bosher *a.* Harris, 1 *How. Pr.*, 206); engagement of counsel in another court (Fowler *a.* Hay, *Ib.*, 38); negligence of an attorney, provided that the client has no adequate remedy against him (Meacham *a.* Dudley, 6 *Wend.*, 514; Denton *a.* Noyes, 6 *Johns.*, 296). So, a default in an action for a penalty under a municipal ordinance has been set aside, where, at the time it was taken, the defendant had a petition pending for relief. (Mayor, &c., of N. Y. *a.* Sands, 2 *Cai.*, 378; S. C., *Col. & C. Cas.*, 420.) So, it has been admitted as a valid excuse, that the default was entered contrary to a verbal agreement between the attorneys in the cause. (Wager *a.* Stickles, 3 *Paige*, 407.) 3. But the courts have refused to open inquests taken upon regular defaults, where the attorney suffered the inquest to be taken supposing there was to be no defence. (Crammond *a.* Roosevelt, 2 *Johns.*, 282.) So, where the cause was on the day-calendar, and the de-

fendant's counsel in court, but the defendant himself and his witnesses absent, and no cause shown for their absence. (Post *a.* Wright, *Col. & C. Cas.*, 183.) So, on a motion to set aside a default on the ground that the defendant had merits, and that the plaintiff had not lost a trial, the court said, that though where a party swears to merits, the court would strongly incline to let him in, yet that he must be able to suggest some excuse, such as inadvertence or accident. (Edwards *a.* McKinstry, *Col. & C. Cas.*, 125; Spencer *a.* Webb, 1 *Cai.*, 118.) And even where the inquest was taken upon a defective notice of trial, the court denied the motion to open, where it appeared that the defendant had not been misled. (N. Y. Central Ins. Co. *a.* Kelsey, 13 *How. Pr.*, 535.)

*Beebe, Dean & Donohue*, for the respondent.

LEONARD, J.—In this action, and three others, against the same defendant, in favor of different plaintiffs, verdicts were obtained at the circuit, by default, against the defendant for $4,000 damages in each case. The counsel for the defendant had been in court and moved to postpone the trial, on the ground that he was unable to procure the attendance of witnesses, many of them being absent from the State, they being very numerous; and the trial being brought on unexpectedly, the defendant was unprepared, &c. The court, at circuit, had denied the application to postpone, and after the defendant·had left the court, inquests were taken in each case.

Motions were subsequently made to set aside these inquests, at a special term, where, upon a full examination, the motions were granted.

The applications were made upon the ground of irregularity; and also, in case the motions should not prevail upon those grounds, for favor upon the facts disclosed.

The motions are now brought up on appeal from the orders setting aside the inquests, and letting the defendant in to defend the actions, and restoring them to the calendar for trial.

The plaintiffs insist that they have obtained an absolute right, by the verdicts so obtained, with which it is not in the power of this court to interfere, except upon the ground of irregularity.

Leighton *a.* Wood.

I do not so understand the practice. The practice has been long well settled that it was in the discretion of the court to set aside inquests and open defaults, for the purpose of attaining justice by a fair trial, when it appeared that the defaulting party had a good and substantial defence upon the merits, or that such defence probably existed, to the whole or some part of the action.

Such relief is often granted, even against the open and confessed negligence of the defaulting party, or of his attorney or counsel.

The plaintiff can claim no actual right to hold an unjust verdict, whether the whole amount of the verdict is involved or only some part of it.

It would be a mockery of justice to hold a verdict, obtained without a hearing of the case for the defence, where the court could not be fully satisfied that the defendant had no evidence that would materially reduce the verdict or wholly defeat the action. The relief asked for in such cases is usually granted upon terms of compelling the defaulting party to repair the damages which his default has occasioned to the other side, by paying the costs of the term which has been lost, of the inquest, and of opposing the motion to open the default. And where the defendant is in such pecuniary circumstances as to endanger the recovery, the additional condition is imposed, of permitting the verdict to stand and execution to issue as security. No substantial right of the plaintiff is interfered with. His cause of action remains. He can still pursue his remedy, bring his cause to trial, and obtain his verdict, if his proof will warrant a recovery; and if it will not, certainly it would be a reproach to the administration of justice to permit a recovery by default, even after negligence on the part of the defendant in preparing his cause for trial.

The discretion of the court in denying such an application, and the severity of the terms liable to be imposed, is a sufficient protection against the unnecessary or repeated occurrence of defaults.

Orders of this description are discretionary, and are not subject to review upon appeal. But were we to look into the merits of the application, considering the nature of the action, the amount of the recovery, the number of witnesses required,

and the shortness of the time left to procure them after the learned judge who presided at the circuit had decided that he would not postpone the trial, it would be impossible to arrive at any different conclusion from that of the judge who vacated the inquests, or to doubt the soundness of the legal discretion which directed the orders now appealed from.

It does not appear from the face of these orders whether the motions were granted upon the ground of favor, or of irregularity in the proceedings.

We are bound to presume that the orders were granted for favor, inasmuch as we can find no irregularity; and the orders ought to have been granted for the former reason.

It is not claimed that the defendant is not well able to respond for any recovery which the plaintiffs may obtain.

The order should have been granted on the condition of the defendant paying the costs of the term of the inquest, and of opposing the motion. That part of the order directing the plaintiff to pay the costs of the motion should be submitted to the judge who heard the motion for resettlement, and the terms above indicated should be imposed upon the defendant.

It is but just to mention, that the learned judge who heard the motions at special term, states that the order was settled in this form, as to costs, through inadvertence—the motion having been in fact decided differently in respect to the costs.

The orders appealed from are in all other respects affirmed, without costs.

SUTHERLAND, P. J., concurred.

BARNARD, J., expressed no opinion.